UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICKY KAMDEM-OUAFFO, PH.D., | |
| Plaintiff, | Case No. 4:15-cv-00129-BLW |
| v. | MEMORANDUM DECISION AND ORDER |
| IDAHOAN FOODS, LLC, | |
| Defendant. | |

**INTRODUCTION**

The Court has before it Defendant's Motion for Summary Judgment (Dkt. 27) and Defendant's Motion to Seal (Dkt. 28). The Motions are fully briefed and the Court finds these matters appropriate for decision without oral argument. For the reasons explained below, the Court will GRANT both motions.

**BACKGROUND**

Plaintiff Ricky Kamdem-Ouaffo, Ph.D. ("Plaintiff") was employed by Defendant Idahoan Foods, LLC ("Defendant" or "Idahoan Foods" or "the Company") as a Senior Food Scientist from December 2012 until his termination on July 11, 2014. *See* Compl. ¶¶ 31, 49–51, Dkt. 1-1. Idahoan Foods is an Idaho-based company that produces and sells various potato products. In mid-2012, Idahoan Foods brought the function of developing and blending seasonings and flavorings for its potato products in-house. This decision

prompted a need for a Senior Food Scientist position within the Research and Development Department to work at the Company's Idaho facility. After an interview with the Company's former CEO, Plaintiff received and accepted an employment offer as Senior Food Scientist on or around December 3, 2012. *Id*. ¶¶ 31–32. Plaintiff's position entailed development of commercial products, new technologies, and leadership for the design, building, and equipping of new product development laboratories. *Id*. ¶¶ 39–42.

Plaintiff was terminated from his position with the Company on July 11, 2014. On September 2, 2014, he filed a Charge of Discrimination with the Idaho Human Rights Commission (IHRC) and the Equal Employment Opportunity Commission (EEOC), alleging that his termination was based on race and national origin discrimination.[1] *Id*. ¶ 138. Plaintiff is Cameroonian and black. *Id*. ¶¶ 2–3. Plaintiff alleges that he suffered two discriminatory incidents during his tenure. The first occurred at a 2013 Christmas event at Idahoan Foods' Corporate Headquarters. At that event, Art Polson, a salesman employed by the Company, "quiz[ed] the Plaintiff about his nationality of origin" and "asked the Plaintiff some American citizenship test questions[,]" including questions about "the Civil War" and "former American presidents" in the presence of Idahoan Foods Executives, including the CEO Drew Facer. Compl. at ¶¶ 36-38. This interaction lasted three to four minutes. Kamdem Dep. Vol. II at 207:6-7, Dkt. 27-6.

---

[1] The charge of discrimination was marked "Received" on September 2, 2014. *See* Dubreuil Decl. Ex. I, Dkt. 27-23; Compl. Ex. 0001, Dkt. 1.

Plaintiff also alleges that, on a subsequent occasion in the R&D Department during the first quarter of 2014, he spoke with Polson for several minutes along with another employee, Adriana Trejo. Kamdem Dep. Vol. II at 222:9-10, 224:1-10. According to Plaintiff, Polson asked questions about nationality, a green card, and citizenship. Adrianna Trejo mentioned that her husband was "in need of some kind of citizenship paper or [was] in the process of [obtaining] it." *Id*. at 224:1-10. Plaintiff did not like the conversation and walked away. *Id*. at 222:9-16, Dkt. 27-6.

The EEOC issued Plaintiff a "Notice of Right to Sue" in May 2015, and Plaintiff filed the present suit asserting claims for employment discrimination, wrongful termination, breach of contract, and infliction of emotional distress arising from his termination. Additionally, Plaintiff contends that Defendant's subsequent refusal to rehire him for other positions within the Company was unlawful retaliation in response to his complaints of race discrimination filed with the IHRC and EEOC.  *Id*. ¶¶ 145–47.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant

unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions,

answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). Furthermore, only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

The Circuit has also "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988).

Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

## ANALYSIS

### 1.    Breach of Contract

Under Idaho law, in the absence of an express agreement between the employer and the employee limiting either party's right to terminate the contract, either the employer or the employee may terminate the employment relationship "at will" without incurring liability—that is, at any time for any reason. *MacNeil v. Minidoka Memorial Hosp.*, 701 P.2d 208 (Idaho 1985), *overruled on other grounds by Metcalf v. Intermountain Gas Co.*, 788 P.2d 744 (Idaho 1989).

Here, Plaintiff was clearly an at-will employee. He entered into a written contract of employment which expressly stated that his employment with Idahoan Foods would be at-will and that all prior agreements and understandings were superseded. Eaton Decl. Ex. 29, at 40–41, Dkt. 27-4. Additionally, Plaintiff received and signed an "Employment Statement" that specified employment with Idahoan Foods was at-will. *Id.* at 45. To avoid his at-will status, Plaintiff asserts only that "Idahoan Foods represented that the role of Senior Food Scientist was a long term corporate role and even provided incentives for the Plaintiff for wanting to stay long term with the company for at least three years." *See* Compl. ¶ 218, Dkt. 1-1. However, retention incentives and statements regarding long-

term career opportunities do not convert at-will employment into a contract for employment of a fixed duration. It is ordinary for an employer to encourage its at-will employees to stay with the company long term and to provide incentives for doing so. At no time did Plaintiff's employment status deviate from the at-will status under his express employment agreement.

Accordingly, Defendant's Motion for Summary Judgment is granted as to the breach of contract claim.

**2.      Breach of the Covenants of Good Faith Fair Dealing**

To avoid the effect of his at-will status, Plaintiff argues that the conduct of Idahoan Foods surrounding his termination breached the company's obligation of good faith and fair dealing. The "[c]ovenant of good faith and fair dealing . . . is implied in all contracts, including those for employment-at-will." *Cantwell v. City of Boise*, 191 P.3d 205, 213 (Idaho 2008). However, the covenant does not provide rights beyond those available under a negotiated contract. *Id.* at 214. Rather, it requires parties to perform, in good faith, the obligations existing under the contract. *Id.* at 213. Breach of the covenant occurs where a party "violates, qualifies[,] or significantly impairs any benefit or right of the other party under an employment contract[,] whether express or implied." *Id.* at 213–14. Idaho courts have cautioned against using this covenant to place limits on the termination of an at-will employee. *See Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 390 (2005) ("[T]he covenant of good faith and fair dealing does not alter the right to fire an at-will employee; that is, the covenant does not create good cause as a requirement.").

Indeed, this Court has previously dismissed a claim like that presented here to avoid "mak[ing] an end run around the legal consequences of [an employee's] at-will status." *See Willnerd. v. Sybase.*, No. 1:09-CV-500-BLW, 2011 WL 2710085 at *3 (D. Idaho July, 2011).

Here, Plaintiff fails to identify a contractual duty that Idahoan Foods failed to perform in good faith. The only alleged wrongful conduct is Idahoan Foods' termination of Plaintiff after only a short tenure, without notice or cause. However, as stated above, Plaintiff's contract was at-will and thus contained no provisions requiring notice or cause before termination. Idahoan foods did nothing more than exercise its contractual right to terminate Plaintiff at will. Accordingly, Defendant's Motion for Summary Judgment is granted as to the Breach of the Covenant claim.

**3.     Wrongful Termination**

Under Idaho law, a discharged employee may assert a common law action for wrongful termination where his or her discharge violated public policy. *See Edmondson v. Shearer Lumber Products*, 75 P.3d 733, 737 (Idaho 2003). Here, Plaintiff's wrongful termination claim simply repeats allegations that Idahoan Foods fired him without notice or cause; it points to no public policy implicated by his termination.  Accordingly, Plaintiff fails to make out a valid wrongful termination claim and Defendant's Motion for Summary Judgment is granted as to this claim.

4.       **Unjust Enrichment**

"[U]njust enrichment occurs where a defendant receives a benefit which would be inequitable to retain without compensating the plaintiff to the extent that retention is unjust." *Medical Recovery Services, LLC v. Boneville Billing and Collections, Inc*., 336 P.3d 802, 805 (Idaho 2014). "A prima facie case for unjust enrichment exists where: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Id*.

Plaintiff alleges that his work to create new products, ideas, and technologies for Idahoan Foods conferred a benefit on the company for which he was not compensated, and that "equity and good conscience demand that Idahoan Foods" should pay Plaintiff for the value of such work." *See* Compl. ¶ 257, Dkt. 1-1. Plaintiff has not demonstrated that he performed services that were not compensated, however. Because he was compensated with a salary for his services under an enforceable employment contract, and he does not claim that such compensation was unreasonable, he fails to state a claim for unjust enrichment. *See U.S. Welding, Inc. v. Battelle Energy All., LLC*, 728 F. Supp. 2d 1110, 1116–17 (D. Idaho 2010) ("Because there is an express contract dealing with the essential subject matter of the relationship between the parties, a claim for unjust enrichment cannot apply unless the contract is otherwise unenforceable."). Absent more, the Court cannot conclude that it would be inequitable for Idahoan Foods to retain the

benefit Plaintiff bestowed; after all, the employer's retention of a benefit conferred by an employee, in exchange for a salary, is the essential purpose of the employer-employee relationship. Accordingly, Defendant's Motion for Summary Judgment is granted as to this claim.

## 5. Constructive Trusts

On similar reasoning, the Court rejects Plaintiff's contention that the record supports the imposition of a constructive trust. "[A] constructive trust arises when one who holds title to property is subject to an equitable duty to convey the property to another in order to prevent unjust enrichment." *Medical Recovery Services, LLC v. Boneville Billing and Collections, Inc.*, 336 P.3d 808 (Idaho 2014) (citations omitted). Plaintiff fails to establish that Idahoan Foods was unjustly enriched and therefore no claim exists for constructive trust. Accordingly, Defendant's Motion for Summary Judgment is granted as to this claim.

## 6. Infliction of Emotional Distress

Plaintiff asserts a claim for "infliction of emotional distress," but does not indicate whether it is of the *intentional* or *negligent* variety. *See* Compl. ¶¶ 227–39, Dkt. 1-1. The Court examines the claim under both theories.

In Idaho, a claim for negligent infliction of emotional distress requires a showing of the following elements: (1) a legally recognized duty, (2) a breach of that duty, (3) a causal connection between the defendant's conduct and the breach, and (4) actual loss or damage. *See Brooks v. Logan*, 903 P.2d 73, 78 (Idaho 1995). The plaintiff must

demonstrate a physical manifestation of the alleged emotional injury. *Black Canyon Racquestball Club, Inc. v. Idaho First Nat'l Bank*, 804 P.2d 900, 906 (Idaho 1991).

Here, Plaintiff alleges "emotional distress, pain, loss of enjoyment, and humiliation" resulting from his termination. *See* Compl. ¶ 238, Dkt. 1-1. However, the Complaint makes no allegations of a duty or breach of that duty which caused his supposed injuries. Accordingly, he fails to assert a claim for negligent infliction of emotional distress.

A claim for intentional infliction of emotional distress requires a plaintiff to show that (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the conduct and the emotional distress, and (4) the emotional distress was severe. *See Nation v. State Dep't of Correction*, 158 P.3d 953, 968 (Idaho 2007). Additionally, the conduct at issue must rise to the level of "atrocious" behavior "beyond all possible bounds of decency." *Edmondson v. Shearer Lumber Prod.*, 75 P.3d 733, 741 (Idaho 2003).

There is nothing in the record to suggest that Defendant's behavior was "extreme and outrageous." Accordingly, the claim for intentional infliction of emotional distress also fails and Defendant's Motion for Summary Judgment is granted as to this claim.

### 7.    Title VII Race and National Origin Discrimination

The Court analyzes Plaintiff's Title VII Claim through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this analysis, a plaintiff must first establish a prima facie case of employment discrimination.

*See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). A plaintiff may establish a prima facie case based on circumstantial evidence by showing: (1) he is a "member[] of a protected class"; (2) he was "qualified for [the] position[] and performing [his] job satisfactorily"; (3) he "experienced adverse employment action[]; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Id*. at 1156. If a plaintiff establishes a prima facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* at 1155.  If the employer does so, the "plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons for [the termination are] mere pretext for unlawful discrimination." *Id*.

"As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." *Chuang v. Univ. of Cal. Davis, Bd. of Trs*., 225 F.3d 1115, 1124 (9th Cir. 2000) (citations and internal quotation marks omitted). Moreover, this Court recognizes the "[i]mportance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the

evidence and an opportunity to evaluation the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).

### A.    *Prima Facie Case*

Plaintiff has sufficiently established the first three elements of his prima facie discrimination claim. First, Plaintiff belongs to a protected class. Second, for summary judgment purposes, the Court believes that he was qualified for the position and performing satisfactorily. Third, he was subject to an adverse employment action—here, termination. Thus, the focus is on the fourth element of the Plaintiff's prima facie case: whether similarly situated employees outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

By Plaintiff's own admission, he was the only Senior Food Scientist for Idahoan Foods, LLC. *See* Compl. ¶¶ 34, 122, Dkt. 1-1. The Court notes that, when viewing similarly situated comparators, the employee's roles need not be identical; they must only be similar in all material respects. *See Hawn*, 615 F.3d at 1157. However, Plaintiff does not claim, and the record does not support, that there was even one employee with a role similar in all material respects to that of Plaintiff, let alone that such an employee was treated more favorably. Thus, the analysis turns on whether other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

"A plaintiff may show an inference of discrimination in whatever manner is appropriate in the particular circumstances." *See Hawn*, 615 F.3d at 1156. Therefore, we

look broadly at whether the record gives rise to an inference of discrimination. Although Plaintiff's briefing is extensive, it is, in large part, comprised of copied and pasted facts and conclusions of law, giving little insight as to how an inference of discrimination might arise and on what factual basis it could be supported. Plaintiff alleges that he suffered two discriminatory incidents during his tenure. The first occurred at a 2013 Christmas event at the Company's Corporate Headquarters. The second occurred during the first quarter of 2014 on the Company's premises. Both consisted of fellow employees asking Plaintiff about his national origin or U.S. citizenship. *Id.* ¶¶ 36–8*; Kamdem Dep. Vol. II, at 217–28, Dkt. 27-6.

For purposes of summary judgment, the Court assumes the accuracy of Plaintiff's assertions about these events. However, such evidence is insufficient to give rise to an inference of discrimination. Where an employee relies on discriminatory comments as direct evidence of discrimination, some degree of connection between the comments and the termination decision is required. *See, e.g.*, *Merrick v. Farmers Ins. Grp*., 892 F.2d 1434, 1438 (9th Cir. 1990) (upholding summary judgment and finding that "'stray' remarks are insufficient to establish discrimination"); *see also, e.g.*, *Nesbit v. Pepsico*, 994 F.2d 703, 705 (9th Cir. 1993) (upholding summary judgment and finding that appellant's supervisor's repeated comment that "[w]e don't necessarily like grey hair" was "uttered in an ambivalent manner and was not tied *directly* to Nesbit's termination. It is at best weak circumstantial evidence of discriminatory animus toward [appellant].") (emphasis added); *see also, e.g.*, *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919

(9th Cir. 1996) (holding that a comment by a supervisor that he intended to get rid of all the "old timers" was insufficient to create a genuine issue of material fact because "the comment was not tied directly to [the] layoff."). Even where such comments are made by an employee's *supervisor*, a condition not present here, the Ninth Circuit requires some connection between the comments and the employment decision at issue. *See, e.g.*, *Nesbit*, 994 F.2d 703; *Nidds*, 113 F.3d 912.

Here, the comments made at the Christmas event and in the R&D department were not made by Plaintiff's supervisor or anyone connected in his termination, nor does Plaintiff put forth any evidence otherwise establishing even a circumstantial connection between these stray comments and his termination. Neither Polson nor Trejo had a managerial role over him. Furthermore, there is nothing in the record to indicate that Polson or Trejo worked in the same department as Plaintiff, answered to the same supervisor, or had any influence in the Plaintiff's termination. There is also no evidence to suggest that those involved in his termination may have considered these events, or other impermissible factors, in deciding to terminate Plaintiff. Plaintiff's limited circumstantial evidence and unsupported arguments are not enough to support an inference of race and national origin discrimination.

**B.    *Legitimate, Non-Discriminatory Reasons and Pretext***

Even assuming *arguendo* that Plaintiff established his prima facie case, he has failed to raise a genuine issue of material fact that Defendant's explanations for his termination are pretextual.

Defendant articulated several non-discriminatory reasons for Plaintiff's layoff: (a) the Company needed to reduce personnel expenses; (b) Plaintiff was the highest paid food scientist in the R&D Department; (c) the business purpose for which Plaintiff had been hired had been reversed and there was no longer a need for a Ph.D. scientist; and (d) Plaintiff's position was eliminated. *See* Def.'s Facts ¶¶ 18–22, Dkt. 27-1; *see also* Carter Decl. ¶ 8, Dkt. 27-12; Carter Dep. 22:21-23:11, Dkt. 27-5; Facer Dep. 30:12-32:7, Dkt. 27-3.

Plaintiff, in turn, has not created a triable issue that these stated reasons for his termination were merely pretextual. "A plaintiff can show pretext in two ways, 'either [1] directly by persuading the court that a discriminatory reason more likely motivated the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981)). Plaintiff has done neither. While he emphatically concludes that a discriminatory reason more likely motivated the Defendant in termination of his position, Plaintiff provides little explanation or evidence for this claim.

First, Plaintiff provides no evidence that a discriminatory reason more likely motivated the employers, other than the statements made by Polson and Trejo. This evidence was insufficient to establish a mere inference of discrimination, as explained above, let alone that his employers were more likely motivated by discrimination. Second, Plaintiff fails to provide any evidence to discredit Defendant's proffered

explanations for his termination.  His position was not filled upon his departure and it appears his position has been dissolved. Idahoan Foods, LLC created Plaintiff's position upon hire, under the discretion of a CEO that no longer works for the Defendant. In 2013, the Company reversed its business plan and decided not to bring the flavorings function in-house, eliminating the need for Plaintiff's Senior Food Scientist position. *See* Carter Decl. ¶ 6, Dkt. 27-12. Additionally, the Company's operating profit for the fiscal years 2013 and 2014 was below budget. On July 7 and 8, 2014, the Board of Governors of Idahoan Foods met and the CEO stated the Company needed to be "right sized" and that "tough decisions" had to be made to secure a better future for the Company. Facer Decl. ¶¶ 4–5, Dkt. 27-9; Facer Decl. Exs. A, B, Dkts. 27-10, 27-11. Three days later, on July 11, 2014, five Idahoan Foods employees were laid off, including Plaintiff.[2] Dubreuil Decl. ¶ 13, Dkt. 27-14. Defendant's articulated reasons for the layoff appear factual, logical, and worthy of credence, and Plaintiff has not provided a credible argument to the contrary. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) (affirming summary judgement for the defendant as the plaintiff did not adequately rebut the proffered non-discriminatory reasons for his termination—a corporate restructuring.).

Plaintiff has neither established his prima facie case of employment discrimination nor adequately responded to Defendant's nondiscriminatory reasons for termination with

---

[2] The other four terminated employees were white and born in the United States. *See* Dubreuil Decl. ¶ 13, Dkt. 27-14.

evidence of pretext. Therefore, Defendant's Motion for Summary Judgment is granted as to this claim.

### 8.    Idaho Human Rights Act Race and National Origin Discrimination

Plaintiff also contends that his termination was race-based and national origin-based in violation of the Idaho Human Rights Act (IHRA), I.C. § 67–5901. The analysis of this claim is identical in all respects to the analysis of his Title VII claim. "The purpose of the IHRA is to provide for execution within the state of the policies embodied in the federal Civil Rights Act of 1964, as amended . . ." *Mackay v. Four Rivers Packing Co*., 179 P.3d 1064, 1069 (Idaho 2008). Idaho courts "look to federal law for guidance in the interpretation of the state provisions." *Id*. (*citing O'dell v. Basabe*, 810 P.2d 1082, 1097 (Idaho 1991); *Bowles v. Keating*, 606 P.2d 458 (1979)).

Therefore, Plaintiff's state-law discrimination claim must fail for the same reasons that his federal claim fails. Defendant's Motion for Summary Judgment is granted as to this claim.

### 9.    Title VII Retaliation Claim

Plaintiff also asserts a claim under Title VII for unlawful retaliation in response to his complaints of race discrimination. Specifically, Plaintiff alleges that after he was terminated from Idahoan Foods, Defendant refused to re-employ him for other available positions in retaliation for his filing a discrimination charge with the IHRC and the EEOC. *See* Compl. ¶¶ 145–47, Dkt. 1-1.

Title VII prohibits retaliation by an employer "against an employee for making a charge or otherwise participating in a Title VII proceeding." *Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th Cir. 2007) (citing 42 U.S.C. § 2000e-3). The familiar *McDonnell Douglas* burden-shifting framework may be applied to a claim of retaliation. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). To establish a prima facie claim of retaliation in the failure-to-hire context, Plaintiff must show that: (1) he "engaged in protected activity," (2) the "position for which [he] applied was eliminated or not available to [him]," (3) "because of his protected activities." *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir. 1986).[3] "If a prima facie case is established, the burden then shifts to the employer to proffer an alternative explanation for its action, which the employee may attempt to rebut" by demonstrating that the reasons given are pretextual. *McGinest*, 360 F.3d at 1124.

## A. *Prima Facie Case*

Here, there is no dispute that Plaintiff's filings with the IHRC and the EEOC were "protected activities." *See* 42 U.S.C. § 2000e-3(a); *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007). Defendants argue that Plaintiff failed to establish elements (2) and (3) because he never actually "applied" for any position with Idahoan Foods. The central issue before the Court, therefore, is whether the emails sent by Plaintiff connoting his interest in being rehired by the Company, and Plaintiff's alleged online applications,

---

[3] Courts apply a different analysis where the employer fails to rehire an employee for the *same* position; this type of "retaliation" is treated as a mere continuation of the original discriminatory termination claim. *See, e.g.*, *Thompson v. Permanente Med. Grp., Inc.*, No. C-12-1301 EMC, 2012 WL 4746924, at *4 (N.D. Cal. Oct. 3, 2012).

provide sufficient evidence "that *the* position for which [he] *applied* was eliminated or not available to [him] because of [his] protected activities." *Ruggles*, 797 F.2d 786. (emphasis added).

As a general rule, "a former employee alleging retaliation on a failure to rehire theory must first establish that he 'reapplied' to work for the employer." *Hotchkiss v. CSK Auto Inc.*, 918 F.Supp. 2d. 1108 (E.D. Wash. 2013); *see also, e.g.*, *Ruggles v. Calif. Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir. 1986) (stating that a plaintiff claiming retaliatory failure to hire must "show that the position for which she *applied* was eliminated or not available to her because of her protected activities.") (emphasis added); *Valez v. Janssen Ortho, LLC,* 467 F.3d 802, 807 (1st Cir. 2006) (no adverse employment action where employee did not apply).

Plaintiff asserts that he applied for numerous positions throughout the company, through both emails and the Company's online application process. The Court assesses both application methods in turn.

### (1)    Email "Applications" to HR Director

Plaintiff argues that he sent several applications to Idahoan Foods in 2014, which appear to consist only of emails sent to human resources. In *Valez*, the First Circuit addressed whether emails similar to those at issue here were sufficient to constitute an "application." 467 F.3d at 808. The plaintiff in *Valez* sent her cover letter and resume to human resources that stated she was "interested in being considered for any position available" and listed six specific positions. *Id*. The court concluded that "[s]uch a letter

merely expresses interest in a wide range of positions. It is not the application for a

discrete, identifiable position required under § 704(a) of Title VII. On that basis alone,

the district court properly entered summary judgment for [defendant] on [plaintiff's] Title

VII claim." The court stated that

> [a]n open-ended request for employment should not put a burden on an
> employer to review an applicant's generally stated credentials any time a
> position becomes available, at the risk of a Title VII claim. If we were to
> find such a general request the legal equivalent of an application, we would
> require employers to answer for their failure to hire individuals who did
> nothing more than express a desire to be employed.[4]

*Id*.

Here, as in *Valez*, Plaintiff argues that he sent several "applications" to Idahoan

Foods by sending several emails sent to human resources. Specifically, he sent an email

to Josh Dubreuil, HR Director for Idahoan Foods, on August 15, 2014 stating that he was

applying for "existing and future jobs at Idahoan Foods and its Affiliates." *See* Def.'s

Facts ¶ 35, Dkt. 27-1; *see also* Dubreuil Decl. ¶¶ 18-19 Dkt. 27-14 & Exs. C, D, Dkts.

27-17, 27-18. On August 25, 2014, Plaintiff sent Dubreuil a copy of his resume, but did

not identify a job position that he desired. Dubreuil Decl. ¶¶ 18-19 Dkt. 27-14. On

August 28, 2014, Dubreuil responded to Plaintiff and directed him to the Company's

website, indicating that he should apply for open job opportunities through the

---

[4] The First Circuit in *Valez* recognized, just as the Second Circuit does, "[t]he potential for exceptions to
this general rule . . . [f]or example, if, as a matter of standard procedure, a company never advertises
specific positions that are available for . . . employment, it might be inappropriate to require the
identification of specific positions in a job application." 467 F.3d at 808 n.6.  However, in this case, the
record reflects that the Defendant advertised specific positions that were available for employment;
therefore, the exception recognized by the First and Second Circuit's is inapplicable here.

Company's online application process. *Id.* ¶ 36; Dubreuil Decl. Ex. E at 36, Dkts. 27-18, 27-19.  On September 1 and 8, 2014, Plaintiff sent e-mails to the Company that referred to his "application for the Idahoan jobs" and "for Idahoan Job openings, any job." Dubreuil Decl. ¶ 23, Dkt. 27-14; Dubreuil Decl. Ex. G, Dkt. 27-21. Similar to *Valez*, the Court holds that Plaintiff's e-mails to the HR Department expressing interest for rehire were not the equivalent of an application to the company for a discrete, identifiable position and therefore insufficient to establish elements (2) and (3) of his prima facie case of retaliation.

On December 5, 2014, Plaintiff sent another e-mail to the Company's HR Director, saying he was "apply[ing] for positions currently opened [sic] in Production at Idahoan Foods' Lewisville facility" and with that e-mail Plaintiff enclosed a copy of his resume and a list of nine open position. Dubreuil Decl. ¶ 24, Dkt. 27-14; Debreuil Decl. Ex. H, Dkt. 27-19. Here again, Plaintiff's e-mail is insufficient to establish that he actually "applied" for a position because Plaintiff "merely express[ed] *interest* in a wide range of positions" which was not an "*application* for a discrete, identifiable position . . ." *Valez*, 467 F.3d at 808. (emphasis added). Furthermore, Debreuil had clearly informed Plaintiff that the Company required applicants to complete the online application process, but Plaintiff failed to do so. The August 28, 2014 email from the Company HR Director pointing Plaintiff to the online process was sent *before* the company had notice of his charge of discrimination, which was marked as "received" on September 02, 2014. *See* Dubreuil Decl. Ex. 1, Dkt 27-23; Compl. Ex. 0001, Dkt. 1. This abates concern that the

online application process was not actually a general requirement for external applicants, but only targeted at Plaintiff in retaliation for his protected activity.

Plaintiff asserts that he did submit online applications for these positions and "has produced record about it [sic]." Pl.'s Resp. at 20, Dkt. 30. However, the Company HR Director submitted a declaration asserting that its applicant tracking system shows no online applications from Mr. Kamden for the years 2014–2015.[5] Debreuil Decl. ¶ 39, Dkt. 27-14. Plaintiff fails to establish a material dispute as to this point. First, simply showing job postings by the Company does not, in turn, show that Plaintiff actually completed an application for such jobs. *See* Compl. Ex. 0005, Dkt. 1. Furthermore, Plaintiff's Exhibit 0024 (Dkt. 1), which purports to be a print-out of his email spam box showing confirmation emails of an online application portal, is inadmissible pursuant to Federal Rules of Evidence 901 and 902. "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181–82 (9th Cir. 1988). "Authentication is a prerequisite to the admission of evidence, satisfied by establishing that the proffered item is in fact what it purports to be." *United States v. Alvirez*, 831 F.3d 1115, 1122–23 (9th Cir. 2016). Here, Plaintiff provides no foundation to demonstrate the authenticity of the proffered print-out of his email spam box, such as explaining how the page was accessed or on what date it was printed. Indeed, the print-out itself does not

---

[5] This Declaration indicates that the only online application that Mr. Kamdem submitted was in March 2016. This application is addressed separately below.

show the dates on which the emails were received or other circumstantial indications that the print-out is what it purports to be. Additionally, Plaintiff failed to authenticate the generic confirmation emails from "SmartRecruiters" as having been sent in response to applications with Idahoan Foods, as opposed to another employer using the SmartRecruiters platform. Accordingly, the printout is inadmissible and the Court cannot rely on it in determining the existence of material issues of fact.

Because Plaintiff provides no competent evidence that he formally applied for any positions with the Company in 2014 or 2015, he fails to establish that he suffered an adverse employment action, as he could not be "rejected" for a position for which he did not apply. Additionally, Plaintiff has not established that the Company's proffered reason for his non-selection for these positions—his failure to formally apply—was pretext for retaliation. His retaliation claim based on these early "applications" fails.

### (2)    March 31, 2016 Online Application

It is undisputed that Plaintiff eventually filled out an online application on March 31, 2016 for a single open position—Senior Project Engineer—through the Company's application website. Even then, Mr. Kamdem's application was incomplete because his resume was blank. Dubreuil Decl. ¶ 28, Dkt. 27-14. The Court will nonetheless assume, for purposes of summary judgment, that this constituted an application.

A claim premised on this application fails for two reasons. First, the uncontroverted evidence shows that the position he applied for has not been filled. *See* Dubreuil Decl. ¶ 27, Dkt. 27-14. There is no evidence that Plaintiff's application was

rejected, that the position remains open, that Defendant continues to seek applications from persons with comparable qualifications, or any other evidence to support an inference that he failed to get the job because of his protected activities. *See Lesane v. Aloha Airlines, Inc.,* 226 F. App'x 693, 697–98 (9th Cir. 2007).

Second, this application was submitted nearly one year after Plaintiff's Complaint was filed and ten months after Defendant's Answer to the Complaint denying receipt of any online applications by Plaintiff. *See* Dkts. 28, 27-1. The timing is both suspect and contrary to the general rules of pleading. A supplemental complaint is necessary to set forth "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *See* Fed. R. Civ. P. 15(d). Here, Plaintiff should have sought leave to supplement his Complaint to include this new incident of alleged retaliation which occurred well after his Complaint was filed. *See, e.g.*, *O'Keefe v. Brown*, No. 21CV2659KJMKJNP, 2016 WL 4000931, at *8 (E.D. Cal. July 25, 2016) ("Because these events occurred after plaintiff filed his fifth amended complaint, they should have been raised in a supplemental pleading. Plaintiff may not supplement his complaint by way of his opposition to defendants' summary judgment motion."). Plaintiff's allegation as to this March 31, 2016 application, in support of his retaliation claim, will not be considered.

Accordingly, Defendant's Motion for Summary Judgment as to the federal Retaliation Claim is granted.

## 10.     Idaho Human Rights Act Retaliation Claim

Plaintiff's state law retaliation claim is identical in all material respects to his Title VII claim. The Idaho Human Rights Act (IHRA) Section 67–5911 provides that:

> It shall be unlawful for a person or any business entity subject to regulation by this chapter to discriminate against any individual because he or she has opposed any practice made unlawful by this chapter or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

Idaho courts have not yet established a separate framework for evaluating IHRA retaliation claims in the failure-to-hire context. However, as a general rule, "[f]ederal law guides [Idaho Courts'] interpretation of the IHRA." *Hatheway v. Bd. of Regents of Univ. of Idaho*, 310 P.3d 322 (Idaho 2013). Therefore, the Court's analysis of Plaintiff's Title VII retaliation claim applies equally to the IHRA retaliation claim. Defendant's Motion for Summary Judgment as to this claim is granted.

## 11.    Motion to Seal

Idahoan Foods also filed a Motion to Seal (Dkt. 28) certain documents filed in support of its Motion for Summary Judgment. These include the Declaration of Drew Facer, CEO of Idahoan Foods (Dkt. 27-9), and Exhibits A and B thereto (Dkts. 27-10, 27-11). Plaintiff opposes the motion.

There is a "strong presumption" in favor of access to judicial proceedings and records. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–80 (9th Cir. 2006). Accordingly, a party seeking to seal judicial materials has the burden of demonstrating "compelling reasons" that outweigh the "public interest in understanding the public process." *Id.*

Idahoan Foods argues that these three records contain sensitive business and financial information that, if made public, could cause competitive harm to Idahoan Foods.  Facer's Declaration discusses the state of Idahoan Food's business, Idahoan Foods' operating budgets in 2013 and 2014, financial performance, and future business planning and decisions. Exhibits A and B to Facer's Declaration are two sets of redacted Minutes of Regular Meetings of the Board of Governors of Idahoan Foods. These minutes address the Company's business decisions, future planning, and financial performance and projections. These meeting minutes are treated as highly confidential by the company and not distributed outside the Board and select members of the company's executive team. Noah Decl. ¶ 4.

The Court finds that compelling reasons exist to file these documents under seal. Courts commonly seal business or financial information that is otherwise kept confidential, where such documents could be used to a company's competitive disadvantage. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co. Ltd.*, 727 F.3d 1214 (Fed. Cir. 2013); *In re BofI Holding, Inc. S'holder Litig.*, No. 315CV02722GPCKSC, 2017 WL 784118, at *20 (S.D. Cal. Mar. 1, 2017); *Aviva USA Corp. v. Vazirani*, 902 F.Supp. 2d 1246, 1273 – 74 (D. Ariz. 2012); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. CV 11-1083, 2016 WL 1394347, at *7 (D.N.J. Apr. 7, 2016).  Here, the Court's review of Defendant's exhibits indicate that they contain detailed memorializations of internal discussions regarding company strategy and financials. The disclosure of this proprietary business information runs the risk of harming Idahoan Foods' competitive standing.

Furthermore, there is no apparent public interest in access to these documents. Sealing these documents would not interfere with the "public interest in understanding the judicial process," *Kamakana*, 447 F.3d at 1179, as the Court's decision on the Motion for Summary Judgment does not depend on specific details included in these documents.

Accordingly, the Court will grant the Motion to Seal.

**ORDER**

**IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment (Dkt. 27) is **GRANTED**.

2.      Defendant's Motion to Seal (Dkt. 28) is **GRANTED**.

      a.      The Clerk is directed to file under seal the exhibits lodged at Dkts. 27-9, 27-10, and 27-11, until further order of this Court.

      b.      The Clerk is also directed to unseal Defendant's Motion for Summary Judgment (Dkt. 27) and the remainder of the exhibits filed in support of that motion.

3.      The Court will file a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: March 20, 2017

B. Lynn Winmill
Chief Judge
United States District Court